DELBELLO DONNELLAN
WEINGARTEN WISE & WIEDERKEHR, LLP
*Proposed Counsel for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:                                                                          Chapter 11

ZODIAC INDUSTRIES, INC,                                    Case No.17-22236 (rdd)

                            Debtor.
-----------------------------------------------------------------X

## DECLARATION OF FRANK PASQUALINI PURSUANT TO LOCAL RULE 1007-2

FRANCIS PASQUALINI being duly sworn, deposes and says:

1. I am the president of Zodiac Industries, Inc. (the "Debtor"), and I submit this affidavit pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

## BACKGROUND

2. For over thirty-five years, since 1981, the Debtor has operated a sheet metal manufacturing business in Port Chester, New York. Over the decades, the Debtor has supplied sheet metal to many local construction projects, including all of the duct and HVAC sheet metal work in The Charles L. Brieant Federal Courthouse.

3. The Debtor's financial troubles stem from a dispute with The Trustees of Sheet Metal Workers International Local 38 ("Local 38"). For approximately a year, the Debtor and Local 38 have been embroiled in litigation concerning alleged unpaid contributions. The Debtor strongly

believes it over-paid Local 38 by approximately one million dollars.

4. The Debtor faithfully paid its contributions for decades, netting millions upon millions of dollars to Local 38. The Debtor remitted close to a million dollars in early 2016.

5. The Debtor was shocked when Local 38's representatives began calling the Debtor's management on a daily basis demanding payments, including unorthodox demands for cash, or else Local 38 threatened to pull the Debtor's workforce from its jobsites.

6. The Debtor was fearful that Local 38 would pull its workforce from the jobsites so, under duress, the Debtor paid Local 38 over eight hundred thousand dollars in addition to remaining current in its payments to Local 38. These coerced payments crippled the Debtor.

7. Despite the Debtor's heroic efforts to cooperate with Local 38, Local 38 caused the Debtor's labor force to be pulled off the job in the summer of 2016. This virtually destroyed the Debtor's business.

8. The Debtor later came to find out that the union employee who was responsible for receiving and applying the Debtor's payments had mismanaged Local 38's accounting records, including failing to deposit checks, failing to turn over payments sent to Local 38 that were earmarked for the Sheet Metal Workers International Funds, and misapplying payments and potentially misappropriating funds. After her actions were discovered by Local 38, the Debtor believes she was terminated and sued by Local 38. Ultimately, she entered into a consent stipulation.

9. The Debtor believes the dispute stems from Local 38's mismanagement, through its employee, of the Debtor's payments. The Debtor hired its own nationally renowned experts to analyze its payments to Local 38 over the years, which the Debtor asserts shows no liability whatsoever.

10. Regardless of the foregoing wrongdoing by Local 38's employee, Local 38 refuses to deal with the Debtor in good faith and is pushing forward with costly litigation. Local 38 has also sued me personally, although I strongly deny there is any basis whatsoever for personal liability even if any monies were due, which they are not.

11. When Local 38 shut down the Debtor's operations, the Debtor was unable to complete several projects. The Debtor had approximately $2 million in work booked, and approximately $1 million in receivables due. Projects that the Debtor was unable to complete were forced to hire replacement subcontractors, resulting in completion costs that eclipsed the Debtor's receivables. It was a devastating blow to the Debtor.

12. The Debtor's desire is to utilize the bankruptcy process in order to reorganize its affairs. The Debtor believes that with the help of counsel it will be able to restructure its affairs, collect on its claims, and propose a plan of liquidation that is in the best interests of its creditors and affords them the greatest recovery possible.

13. The needs and interests of the Debtor's creditors will best be served by the continued possession of its property and management of its affairs as debtor-in-possession under Chapter 11 until confirmation of a reorganization plan.

## INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

14. In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

15. The Debtor's offices and manufacturing facilities are located at One Martin Place, Port Chester, New York.

**Local Rule 1007-2(a)(2)**

16.     This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**Local Rule 1007-2(a)(3)**

17.     Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

18.     A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed hereto.

**Local Rule 1007-2(a)(5)**

19.     A list of the names and addresses of the five largest secured creditors is as follows:

> JPMorgan Chase Bank, N.A.
> Collateral Management Small Business
> PO Box 33035
> Louisville, KY 40232-9891
> Line of Credit, approximately $217,690.90 outstanding

**Local Rule 1007-2(a)(6)**

20.     A balance sheet will be filed separately.

**Local Rule 1007-2(a)(7)**

21.     There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

22.     None of the Debtor's property is in the possession of any custodian, public officer,

mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

23. The Debtor leases its offices and manufacturing facility at One Martin Place, Port Chester, New York for which the Debtor has a written lease.

**Local Rule 1007-2(a)(10)**

24. The Debtor's records are located at its offices located at One Martin Place, Port Chester, New York and its substantial assets are located there.

**Local Rule 1007-2(a)(11)**

25. The following legal actions are pending against the Debtor:

*Trustees of Sheet Metal Workers International Association Local 38 Insurance and Welfare Fund, et al. v. Zodiac Industries, Inc. and Frank Pasqualini,* United States District Court, Southern District of New York (White Plains Division), Civil Docket No. 16-cv-02109 (nsr)(jcm).

*Board of Trustees, et al. v. Zodiac Industries, Inc.,* United States District Court, Eastern District of Virginia, Civil Action No. 1116 CV 1068 (ajt/idp)

**Local Rule 1007-2(a)(12)**

26. The Debtor's senior management includes Frank Pasqualini, president.

**Local Rule 1007-2(b)(1) and (2)**

27. The Debtor's estimated weekly payroll to employees for the thirty (30) day period following the Chapter 11 petition is $15,928.

28. The Debtor's estimated weekly payroll and payments to officers, stockholders, and directors for the thirty (30) day period following the Chapter 11 petition is $13,120.

**Local Rule 1007-2(b)(3)**

29. The Debtor estimates that it will break even or operate at a slight profit in the 30-day period following the filing of the chapter 11 petition. A 13-week budget will be filed.

## **CONCLUSION**

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: February 16, 2017

By: */s/ Frank Pasqualini*
Frank Pasqualini, president